RIO GRANDE & EAGLE PASS RAILWAY COMPANY v. JUAN ORTIZ.

No. 2735.

1.   **Waiver.**—No waiver of ownership of land, with its incidental rights, which has been wrongfully taken for right of way by a railway company, without payment or tender thereof, can be implied as against the rightful owner, from the mere fact that he elects to sue for the damage done instead of seeking a recovery of the land.   In such a suit the judgment rendered in the plaintiff's favor should be regarded as an assessment of the amount due him and a demand therefor until paid.   It in no regard affects his title until the railway company by payment of the sum due acquires the legal right to use the land or the right of way.

2.   **Cases Followed.**—Railway v. Johnston, 59 Pennsylvania State, 290; Gilman v. Railway, 18 Wisconsin, 155; Hibbs v. Railway, 39 Iowa, 340; White v. Railway, 7 Heiskell (Tennessee), 518; Gallison v. Railway, 7 South Carolina, 17; and Provolet v. Railway, 57 Missouri, 256, followed.

3.   **Same—Condemnation— Constitution Construed. —** When a law requires that payment shall be made for land taken for public use before the right to such use can be acquired, the paramount title remains with the owner until the money is paid, unless its payment be waived, and an effort to enforce payment is not a waiver.

4.   **Same.**—A judgment against a railway company for damages claimed by the plaintiff for appropriating his land for road bed without paying therefor, which judgment is not satisfied, neither affects the plaintiff's title to the land so taken nor con-

cludes him in his right to demand compensation from another railway company which succeeded to the rights of the original trespasser and continues to use the land. The purchasing company bought the road bed *cum onere,* and can not be an innocent purchaser of that portion of the road wrongfully built without payment to the land owner.

ERROR from Webb.    Tried below before Hon. J. C. Russell.
The opinion states the case.

*Atlee & Ernest,* and *A. L. McLean,* for plaintiff in error.—1.    Whatever rights of priority plaintiff Ortiz may have had over all others as against the property of the Rio Grande & Pecos Railway Company, the same were merged into the judgment of the District Court in cause No. 297 in favor of said Ortiz against said railway company, rendered March 27, 1884, and if he could have had a foreclosure of lien in said suit to secure payment of said judgment, and failed to insist on such foreclosure, such failure amounts to an abandonment of the lien.    Guernsey v. Carver, 24 Am. Dec., 60, and note; Wayman v. Cochrand, 35 Ill., 152; Runnamaker v. Cordray, 54 Ill., 303; Wann v. McNulty, 43 Am. Dec., 58; Napier v. Gidiere, 40 Am. Dec., 617; Pike v. McDonald, 54 Am. Dec., 598.

2.    Plaintiff Ortiz had notice of suit pending in the United States Circuit Court to foreclose the lien of the first mortgage bondholders on the property of the Rio Grande & Pecos Railway Company, and was notified to present to the master in chancery appointed by said court any claim which he might have, entitled to priority over that of the first mortgage bondholders, as against the property of the Rio Grande & Pecos Railway Company, and failure to secure recognition of any such claim before the rights of defendant the Rio Grande & Eagle Pass Railway Company intervened, the matter is now *res adjudicata,* and such claim can not be urged against the property of said Rio Grande & Eagle Pass Railway Company.    Tadlock v. Eccles, 20 Texas, 782; Webb v. Mallard, 27 Texas, 86; Ayres v. Duprey, Id., 595; Chilson v. Reeves, 29 Texas, 281; Barrett v. Barrett, 31 Texas, 351; Gilman v. Railway, 37 Wis., 319.

3.    Defendant in error having presented his claim against the Rio Grande & Pecos Railway Company to the special master in chancery appointed by the United States Circuit Court, a court having jurisdiction of the matter, the refusal of the master to allow his claim, from which no appeal was taken, was a final judgment and conclusive of the question; and having been determined by a court of competent jurisdiction, the question is not open to re-examination by any other tribunal. Tadlock v. Eccles, 20 Texas, 782.

4.    A bona fide purchaser at a trustee's foreclosure sale, without notice, actual or constructive, to the contrary, may rely upon the decree of the court ordering the sale decreeing that the purchaser should acquire free from all liens and encumbrances whatsoever; and the holder of a claim or lien against the said property which might have been established be-

fore such sale can not be satisfied out of the said property in the hands of such purchaser. His position is that of a purchaser in good faith without notice of a prior unrecorded deed. Ayres v. Duprey, 27 Texas, 595; Barrett v. Barrett, 31 Texas, 351.

*W. Showalter*, for defendant in error.—1. The doctrine of merger does not apply to a lien to secure a debt, where the debt is put in judgment and the lien not foreclosed. The lien in each case still exists until the debt is barred by the statute of limitations, and may be foreclosed at any time. Jones on Mort., arts. 936, 937; Bridgman v. Railway, 23 Am. and Eng. Ry. Cases, 34, and note; Adams v. Railway, 57 Vt., 240; Kittel v. Railway, 20 Am. and Eng. Ry. Cases, 165; Kendall v. Railway, 11 Am. and Eng. Ry. Cases, 423.

2. The former judgment will not be a bar to further litigation regarding the same subject matter, unless the same vital point was put directly in issue or was fairly within the scope of the pleadings, if the matter be not such that it had by necessity to be determined before the judgment of the court could have been given. Philipowski v. Spencer, 63 Texas, 604; Frankland v. Cassady, 62 Texas, 418.

3. It matters not that the Circuit Court did not allow the claim of Ortiz or give it preference over the claims of the mortgagees, as he had never parted with the title to his land. Said land was not a part of the proceeds of the Rio Grande & Pecos Railway Company, and the receiver of said road could not sell what he did not have. Const., sec. 17; Railway v. Ferris, 26 Texas, 602; Bridgman v. Railway, 23 Am. and Eng. Ry. Cases, 34, and note; Rev. Stats., art. 4181; Railway v. Hays, 3 Ct. App. C. C., 56; Hays v. Railway, 62 Texas, 397; William v. Railway, 20 Am. and Eng. Ry. Cases, 378.

4. "No person's property shall be taken, damaged, or destroyed or applied to public use without adequate compensation being made, unless by the consent of such persons, and when taken, except for the use of the State, such compensation shall be first made or secured by a deposit of money." Const., sec. 17; Rev. Stats., art. 5181.

5. The claim of plaintiff was an equitable lien upon his land, upon his property the title to which had not been divested by condemnation or otherwise, and came not within the jurisdiction of the master in chancery, which was to pass upon the question of priority of liens upon the property of the railway company.

GAINES, ASSOCIATE JUSTICE.—This suit was brought by appellee to recover of appellant the sum of $800. The cause was submitted to the court under a statement of facts agreed upon by the parties, and resulted in a judgment for plaintiff for the whole amount claimed. The statement agreed upon as the evidence in the case is as follows:

"1.   Juan Ortiz, as plaintiff, recovered in the District Court of Webb County, on March 27, 1884, against the Rio Grande & Pecos Railway Company, defendant, in cause No. 297 on the docket of said court, a judgment, by agreement of parties, for $800 and interest from the date thereof at 8 per cent, besides costs of suit, for all which execution was awarded, and on which judgment said plaintiff paid all costs, to-wit, $35.

"2.   In June, 1884, execution was issued, and returned not satisfied.

"3.   The said judgment was the measure of damages to the plaintiff Ortiz for right of way over his land, which the said Rio Grande & Pecos Railway Company entered and used for its right of way until succeeded in such use of the land by the Rio Grande & Eagle Pass Railway Company, which has continued its use of the land to the present time.

"4.   That said judgment and no part of it has been paid, and plaintiff Ortiz is still the owner of the judgment.

"5.   That at the suit of the first mortgage bondholders a receiver was appointed by the United States court having jurisdiction on April 9, 1884, the suit being to foreclose their lien on the Rio Grande & Pecos Railway, and the receiver took possession of all the property of said road.

"6.   That on June 11, 1884, a special master in chancery was appointed by the court, who was directed to ascertain and report upon all claims which might be presented to him against said railway company, and of all persons having or asserting any liens or claims by judgment or otherwise prior to the first mortgage bonds, and upon all claims entitled to preference of payment out of the proceeds of said railway, which was to be sold to satisfy the demands of the creditors of said railroad and the mortgage lien thereon foreclosed.

"7.   That due notice was given to the plaintiff and all creditors to present their claims before said master; that plaintiff presented said judgment to the master as a claim to be paid out of the proceeds of said railroad, which claim was not allowed by the court.

"8.   That about June 20, 1885, the Rio Grande & Pecos Railway was sold by order of the court, to be held and possessed by the purchaser free from all liens and encumbrances whatsoever, and the proceeds thereof were ordered to be applied to the payment of the mortgage bonds, after payment of all claims allowed by the court as having preference over said bonds.

"9.   That defendant, the Rio Grand & Eagle Pass Railway Company, is the owner of all the property of the Rio Grande & Pecos Railway Company, having acquired the same by purchase at the trustee's sale made by order of the United States Circuit Court, which order decreed that the purchaser should acquire free from all liens and encumbrances whatsoever."

It is insisted that the judgment is erroneous; first, upon the ground that the plaintiff having elected to sue the the Rio Grande & Pecos Railway

Company for damages for appropriating his land, without asserting his lien in that action, had waived the lien, if any ever existed; second, for the reason that his right of asserting a lien and of claiming any recovery against appellant was concluded by the action of the United States court upon his claim; and third, because the plaintiff, even if entitled to recover anything, was not entitled to recover the damages as assessed in the former suit between him and the former company.

In regard to the first ground, we are of the opinion that the plaintiff was not bound to show that he had a lien upon the property in order to maintain this action. As we construe the statement the Rio Grande & Pecos Railway Company entered upon his land and made use of so much of it as was needed for its right of way for railroad purposes, without having resorted to the method provided by law for its condemnation to that use. The company, by virtue of its franchises, had the right to appropriate the land, provided it first paid a just compensation to the owner, to be assessed in the manner prescribed by the statute. This the plaintiff could not prevent. But the company having already occupied the land without either the payment or assessment of any compensation, he had two methods of enforcing his rights. The first was by an action for the recovery of the land, which would have forced the company to take the statutory measures for its condemnation; and the second was to bring a direct action to recover his damages for the appropriation of the land. Railway v. Benitos, 59 Texas, 326.

An injured party may sometimes waive a tort and sue as upon an implied contract. But that is probably not the principle upon which the right of action should be sustained when the owner sues for his damages. At all events, the case is somewhat different from that of an ordinary trespass. The ultimate rights of the parties are that the railroad company is entitled to the easement in the land, and the owner is entitled to his damages. The payment of the damages is, however, a condition precedent to the right of the company. No reason is seen why, should the company appropriate the land and should he concede its right to use it, he should not be permitted to sue for the compensation. Admitting, then, that he does sue for his damages, the question presents itself, what does he concede? Does he concede that the railroad company has acquired the easement, or merely that it is entitled to the right of way upon condition that it pays him such compensatory damages as may be assessed by the court? The latter, we think, is the extent of his concession. If it were necessary to apply the principle of a waiver of tort and an implied assumpsit in order to maintain the action, it would probably be necessary to hold that the payment of the damages was not a condition precedent to the acquisition of the right to use the land; that the owner having elected to treat the transaction as a contract for the sale of the easement, and having sued for the damages as the consideration, would be held to

have affirmed the company's right and would be confined to usual remedies for enforcing such contract. But we think the transaction should not be treated as a contract.

The law gives the company, by reason of its franchise, the right to an easement over the land; it gives the owner the right to his compensation in the event the company appropriates land, and it makes the company's right to depend upon the precedent condition that it first pays the compensation. There is no statutory proceeding in which the owner may take the initiative in order to have his damages assessed. Should the railway company disregard the statute and occupy and use the land without taking the proper steps for its condemnation, and should the owner sue to compel an assessment and payment of the damages, we see no reason why such suit should be held a waiver of his right to hold the land, with all the incidents of ownership, until the compensation be actually paid. A judgment in his favor in such a suit should be considered merely an assessment and demand of the compensation until it be in fact paid. We are of opinion, therefore, that the appellee's title to his land was not affected by his suit against the Rio Grande & Pecos Railway Company and the judgment therein rendered in his favor, except in so far as the company acquired the right to pay the judgment, and thereby to perfect its title to the use of the property. This ruling is supported by the well considered case of Railway v. Johnston, 59 Pennsylvania State, 290, and is in accordance with the principles announced in the following cases: Gilman v. Railway, 40 Wis., 653; Pfeifer v. Railway, 18 Wis., 155; Hibbs v. Railway, 39 Ia., 340; White v. Railway, 7 Heisk. (Tenn.), 518; Gallison v. Railway, 7 S. C., 171; Provolet v. Railway, 57 Mo., 256.

These principles are that where the Constitution or statutes of a State require the payment, and not merely the securing of the payment of the compensation, before taking land for a public use, the paramount title remains with the owner until the money is actually paid, unless the payment be waived, and an effort to enforce the payment is not a waiver. As the court in Railway v. Johnston, above cited, say in speaking of the land owners' right to compensation, "this is a sacred constitutional right not to be frittered away by refinement." We think, therefore, that the plaintiff, by obtaining his judgment against the Rio Grande & Pecos Railway Company, which was never satisfied, parted neither with his title to the land nor with his right to demand compensation therefor from another company which succeeded to the rights of the former and continued to use the property.

We come then to the question whether the plaintiff should be held concluded by the order of the United States court which rejected his claim. The statement does not show with clearness what that decree was. The court could hardly have rejected it as a claim against the railroad. It may, however, have determined that the plaintiff did not have

a lien which took precedence over the first mortgage bonds. The court may have determined that since the land had not been paid for the title still remained in the owner, and because a sale under an order of the court could not pass the easement in this land, the plaintiff was not entitled to have his judgment paid from the proceeds. It probably was considered that still holding the title to the land the plaintiff had a sufficient security for his claim. We do not understand the agreed statement of facts to show anything more than that the court decreed that the plaintiff did not have a lien. His rights did not depend upon a lien. Railway v. Johnston, *supra.*

We have not had so much difficulty in determining that the defendant company is liable to make compensation for the land as in holding that the former judgment should be taken as the measure of that compensation. However, the defendant company has succeeded to the rights of the defendant in the former suit by purchase of its property, and whatever claim it has to that portion of its road which lies across plaintiff's land it holds in subordination to his claim for compensation. In a suit between him and the old company that compensation has been assessed at and adjudged to be $800. The present defendant claiming under the former, and still occupying and using the land for the purposes of its railroad, should be held to possess it *cum onere*—that is to say, subject to payment of the damages assessed by the former judgment. As the court say in Railroad Company v. Johnston, from which we have previously quoted: "If, therefore, the original occupant has so managed its case as to escape payment until it has divested itself of its interest by any form of alienation, its alienee, mediate or immediate, if it would enjoy the uncompensated right, must pay the price of it, unless it can be shown that an equity growing out of the conduct of the owner of the soil would estop him." The case quoted from is an authority in point. See also White v. Railway, Gillison v. Railway, Pfeifer v. Railway, previously cited.

It is insisted, however, that at all events the defendant should be here protected as a bona fide purchaser having no notice of plaintiff's claim. But we fail to see how one can claim to be an innocent purchaser who accepts a conveyance from a vendor who is not able to exhibit a title. A prudent person proposing to purchase the Rio Grande & Pecos Railroad would have looked to see that the company had acquired its right of way, either by purchase or condemnation.

We find no error in the judgment and it is affirmed.

*Affirmed.*

Delivered January 17, 1890.