GARNER et al. v. CHICAGO, R. I. & G. RY. CO. (No. 2968.)*

Court of Civil Appeals of Texas. Amarillo. Feb. 29, 1928.

Rehearing Denied March 14, 1928.

---

Cooper & Lumpkin, of Amarillo, for appellants.

Stone & Guleke, of Amarillo, for appellee.

JACKSON, J. This is a suit in trespass to try title instituted by the appellants, C. R. Garner, C. T. Ware, and R. C. Ware, against the appellee, the Chicago, Rock Island & Gulf Railway Company, to recover certain lots and blocks of land situated in Potter county, Tex., and occupied by appellee as a part of its right of way.

In addition to the formal plea of trespass to try title, under which appellants seek to recover the title and possession of the land involved, they plead facts which they allege entitle them, upon the final hearing, to a mandatory writ of injunction directing and requiring appellee to remove its tracks, rails, material, equipment, etc., from the land, and restore it to a condition similar to what it was before the illegal entry thereon and the unlawful appropriation thereof by the appellee.

Appellants' pleadings appear at length in a former opinion by this court, Garner et al. v. C., R. I. & G. Ry. Co., 297 S. W. 1067, in which the decision of the trial court, denying the application of appellants for a temporary restraining order, was affirmed, on the presumption that the trial court found, upon the testimony, consent to the "taking," and also to the appropriation and use of the property for railroad purposes.

On a hearing on the merits, appellee amended its pleading, and, in so far as necessary to a disposition of the questions presented on this appeal, answered by a disclaimer as to a part of the land sued for and a plea of not guilty as to the remainder thereof, which it admits that it entered, but alleges that such entry was not unlawful but was made with the knowledge and express consent and acquiescence of the appellants. The appellee denies that Gaut, Askew, and Wilson were agents for or acting in its behalf in any representations made or any negotiations had with appellants relative to obtaining said land as a right of way, but avers that such committee was acting for and on behalf of the citizens of Amarillo, among whom were the appellants, interested in procuring the construction and operation of appellee's line of railway, and that said citizens had promised to use their best efforts to obtain the right of way necessary for appellee's line of railway, and had endeavored to obtain and donate the land involved in this suit, as a part of such right of way, free of cost to appellee.

The appellee admits that said committee promised to pay appellants for said land as and if adequate contributions from the citizens of Amarillo had been pledged and collected to pay therefor, and pleads that appellants accepted such promise. It admits that the compensation for the land has never been paid by the committee or the citizens of Amarillo and that the appellee, though payment had been demanded of it, declined to

pay the appellants any compensation for said land, because the compensation was to be paid by the citizens of Amarillo, and alleges that appellants knew the conditions and circumstances under which the citizens were undertaking to obtain the right of way, and that the compensation was not to be paid immediately but in a reasonable time, as and if collected; that appellants have an adequate remedy at law in a suit for damages, and that such damages are easily determined in dollars and cents.

The part of appellee's answer relating to the mandatory injunction sought we deem it unnecessary to set out.

The charge of the court and the verdict of the jury, omitting formal parts, reads:

"1. If a party having a right stands by and sees another dealing with or using his property in a manner inconsistent with that right and makes no objection while the use is in progress, and by his silence induces the person so dealing with or using his property to believe that he had assented to such act, when the party so infringing upon his right might have abstained therefrom if objections had been made, and when, under all the circumstances, it was the duty of the person whose right was being infringed upon to make objection to such infringement, in order to save the other party from expense or loss, the party whose right is being infringed upon is considered as having acquiesced in the act thus committed.

"2. Bearing in mind the foregoing instructions and definitions, you will answer the following special issues:

"Special Issue Number 1: Did the plaintiffs consent to the defendant's entry on the land in controversy in order that the defendant might construct its line of railroad thereon?

"We answer: Unable to agree.

"Special Issue Number 2: Did the plaintiffs acquiesce in the use of the property in controversy by the defendant for railroad purposes?

"We answer: Yes."

On this verdict, the court entered judgment to the effect that the appellants have and recover of and from the appellee title to the land involved in the suit, but that they do not have and recover possession of said land from the appellee so long as the same is used for railroad purposes and that the appellants recover said title subject to and burdened with the easement and right of user, vested in appellee, from which judgment this appeal is prosecuted.

Appellants, by numerous assignments, all of which may be considered together, challenge as error the action of the trial court in decreeing that appellee was entitled to the possession, use and enjoyment of the land, not disclaimed, and had an easement thereon for railroad purposes, and adjudging that appellants could not recover possession thereof so long as the property was used for such purposes, because the title of the owner in fee simple cannot be burdened with an easement where, as in this case, the record shows that there is no grant, no consent to the entry, no compensation paid for such easement and that acquiescence in the use of the property has not continued for the period of time required by the statute to mature title to such easement by limitation; hence, appellee was a trespasser and appellants were entitled to recover both title and possession to the land in their suit in trespass to try title.

The appellee, in reply to appellants' propositions, contends that appellants acquiesced in appellee's going upon the land and constructing its line of railroad upon and across it, with the understanding that the price of the land should be paid later, and therefore cannot, upon failure to pay the agreed price or the failure to agree upon a price, maintain an action in trespass to try title, but is relegated to an action for damages or the agreed price for the land.

The record shows without contradiction that appellee entered upon and appropriated the land for its right of way the latter part of July, 1926, and on August 2 thereafter had laid its tracks across the land, on which it claims an easement; that it has no writing evidencing any title or conveyance to such easement; that appellants at no time consented or agreed to donate or give to appellee said right of way. It is admitted that appellants owned the land in fee simple on August 1, 1926; that no compensation has been paid them by appellee or any one else for said right of way; and that appellee refused to pay therefor.

Section 17, art. 1, of the Constitution of Texas, reads, in part, as follows:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the state, such compensation shall be first made, or secured by a deposit of money."

In St. Louis, A. & T. Ry. Co. v. Henderson, 86 Tex. 307, 24 S. W. 381, after quoting the above language of the Constitution of the state, the Supreme Court says:

"The payment of the compensation is a condition precedent to the right to take and use, and title does not vest to the right of way or the use until payment is made."

In Galveston, H. & S. A. R. R. Co. v. Pfeuffer, 56 Tex. 66, the Supreme Court says:

"The right to compensation is not waived by standing by and permitting the company to lay the track over the land"—citing authorities. "Nor is his right to recover the land itself lost if the railroad company will not make such compensation."

In Hays v. Texas & P. Ry. Co., 62 Tex. 397, it is said:

"A party in possession of another's land claiming an easement is a trespasser if his claim

is without foundation. If, in a suit by the owner of the soil, the plaintiff shows title to the land, and the defendant to the easement, the plaintiff recovers subject to the right of the defendant to enjoy the easement. If the defendant shows no title of this character, the owner of the land dispossesses him altogether. * * *

"Nor does the fact that the trespasser is a railroad company, and that our statute provides a summary method by which lands may be condemned to its use and damages assessed to the owner, interfere with the latter's right to prosecute an action of trespass to try title, when the company has taken possession of his land without a resort to this method of condemnation. Whilst it is held, perhaps by the weight of authority, that this summary remedy is exclusive of all others when damages alone are sought by the owner, yet, if he seeks to regain possession and oust the intending company from his property, he may resort to any character of action he might use for that purpose against any other trespasser.

"In our state, where the right to use the summary method is given to the railroad companies alone, the owner of the land cannot force a resort to this remedy, and hence he may sue for the recovery of the land itself or damages in any action appropriate to those purposes"—citing numerous authorities.

In Rio Grande & Eagle Pass Ry. Co. v. Ortiz, 75 Tex. 602, 12 S. W. 1129, the court holds:

"The company, by virtue of its franchises, had the right to appropriate the land, provided it first paid a just compensation to the owner, to be assessed in the manner prescribed by the statute. This the plaintiff could not prevent. But the company having already occupied the land without either the payment or assessment of any compensation, he had two methods of enforcing his rights. The first was by an action for the recovery of the land, which would have forced the company to take the statutory measures for its condemnation; and the second was to bring a direct action to recover his damages for the appropriation of the land. Railway Co. v. Benitos, 59 Tex. 326. * * *

"These principles are that where the Constitution or statutes of a state require the payment, and not merely the securing of the payment of the compensation, before taking land for a public use, the paramount title remains with the owner until the money is actually paid, unless the payment be waived, and an effort to enforce the payment is not a waiver. As the court in Ry. v. Johnston [59 Pa. 290], above cited, say in speaking of the landowner's right to compensation, 'this is a sacred constitutional right not to be frittered away by refinement.' We think, therefore, that the plaintiff, by obtaining his judgment against the Rio Grande & Pecos Railway Company, which was never satisfied, parted neither with his title to the land nor with his right to demand compensation therefor from another company which succeeded to the rights of the former and continued to use the property."

In Southern Kansas Ry. Co. of Texas v. Vance, 155 S. W. 696, this court stated:

"As we understand the law, an owner of land, appropriated by a railroad, is not estopped to demand compensation, though he was present during the construction of the road, *and, until he has received pay thereto, the land is his, for which he may sue* or for damages for its appropriation." (Underscoring ours.)

In Chicago, R. I. & G. Ry. Co. v. Johnson, 156 S. W. 253, although the owner had consented to the entry upon the land by the railway, agreed upon the consideration he was to receive but which was never paid, saw and knew that the railway company was grading its roadbed, laying its tracks, expending money thereon, and operating its trains over its road, this court held:

"Johnson did not donate the right of way, and, if appellant and its assignor placed improvements thereon and expended money, they did so under an agreement through Dye to pay Johnson for his land. Until this agreement was complied with, they did not secure an interest in the land in the nature of an easement. If there was any permission given appellant to enter upon the land, it was under an agreement to pay for it. We think the title to this land did not vest in appellant until it paid for it. * * * If there was any license granted to enter upon the land, it was under an agreement, the terms of which appellant did not comply with, and hence no rights to the land save those which the law gave it under the right of eminent domain. * * * The appellee has not received compensation for the land so appropriated by appellant, and the fact that compensation was agreed upon, instead of having been reduced to a judgment, does not affect the rule that the payment is a precedent condition of appellant's right to the land."

In Texas & P. Ry. Co. v. Ford, 9 Tex. Civ. App. 557, 30 S. W. 372, the plaintiff, who was the owner, instituted a suit in trespass to try title against the railway company to recover certain lands; the railway company answered by general denial, not guilty, and a plea of ten years' limitation, but in the alternative asked, if its defenses to the title failed, condemnation of the land in controversy for railroad purposes. At the conclusion of the testimony, the railroad sought to withdraw its plea of condemnation, which was refused, and the trial court proceeded to condemn the land for the use of the railway. On appeal, the holding is that the prayer for condemnation should have been treated as abandoned and the plaintiff should have been permitted to recover the land in controversy, and the judgment was reformed and rendered for the plaintiff, for the land sued for.

To the same effect are the holdings in Galveston & Western Railway Co. v. Kinkead (Tex. Civ. App.) 60 S. W. 468; St. Louis & Southwestern Railway Co. v. Hargrove (Tex. Civ. App.) 31 S. W. 696.

In each of the decisions by the Courts of Civil Appeals cited, supra, it will be noted that a writ of error was denied by the Supreme Court.

Article 3269, R. C. S. 1925, provides in substance, that when a railroad is sued for prop-

erty or for damages to property occupied by it for the purpose for which it has the right to exercise its power of eminent domain, the court in which the suit is pending may determine all matters in dispute between the parties, including condemnation of the property, upon petition or cross-bill, asking such condemnation by the railroad, but a plea for condemnation shall be an admission of the plaintiff's title to the property.

The appellee did not avail itself of the right given under this statute to ask that the land be condemned for right of way purposes.

██ Under these authorities, it being admitted that no compensation had been paid, which is a condition precedent, no title to the right of way, nor to the use thereof, has vested in the appellee. If the compensation was agreed upon, but not paid, such agreement would not affect appellants' right to the land. The right to compensation had not been waived, and the acquiescence of appellants, for less than one year, in appellee's laying its tracks over the land, had not matured the right to the easement by limitation, and it is not contended that appellants gave or donated the right of way. Appellee concedes that the compensation it alleges was agreed upon had not been paid by the citizens of Amarillo, and that it not only refused to pay the agreed compensation, but refused to pay any compensation whatever for the easement. Hence appellants were entitled to maintain a suit in trespass to try title.

 The land was "taken," at the time it was entered upon, with the intention of appropriating it for railroad purposes. If consent to the entry, without an agreement to give the land or donate the right of way, without compensation, is sufficient to defeat appellants' recovery of title and possession, the appellee, upon whom the burden rested (Southern Kansas Ry. Co. v. Vance, supra), failed to discharge such burden and show consent to such entry or "taking." The court having submitted the issue of appellants' consent to appellee's entry upon the land, and the jury having failed to agree on an answer to such issue, there can be no presumption in support of the judgment that the court found such issue in favor of appellee.

For the purpose of this appeal, we must assume that the entry or "taking" was without the consent of the appellants and therefore unlawful and appellee a trespasser, because the jury did not find a "taking" with consent. It will be noted that the court instructed the jury to bear in mind the "foregoing instructions and definitions" in answering the "following special issues," requiring the jury to consider such instructions and definitions in passing upon both issues submitted.

In special issue No. 1, the court asked if the appellants consented to the entry of appellee on the land to construct its line of railway; such consent could have been either express or implied. The jury failed to agree upon this issue.

In the second issue, he asked if the appellants acquiesced in the use of the property by the appellee for railway purposes, which was answered in the affirmative.

 Manifestly, under this record, acquiescence in the use of the property, after the entry or "taking," which, if done without consent, was unlawful, is not consent to the "taking," and acquiescence in the use of the property for less than a year, where the "taking" was unlawful, would not estop plaintiffs from recovering both title and possession to the land.

The judgment is reversed and the cause remanded.